IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA A. NELMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-04-1180 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 9), Plaintiff's Brief In Support of Motion for Summary Judgment (Document No. 10), Defendant's Motion for Summary Judgment (Document No. 11), and Defendant's Memorandum In Support of Her Motion for Summary Judgment and In Response to Plaintiff's Motion For Summary Judgment (Document No. 12). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS,[1] for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

---

[1] On February 28, 2005, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 13.

## I.       Introduction

Plaintiff Linda A. Nelms ("Nelms") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits.   Nelms argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision.  She asserts that: (1) the ALJ's determination that she can perform medium work is not supported by substantial medical evidence because the ALJ failed to re-contact her treating physician, Dr. Hugo Narvarte, for clarification of his opinion, and further failed to give proper weight to Dr. Narvarte's opinion; (2) the ALJ's findings with respect to her mental impairment are erroneous because they are based on a vague and presumptive limitation regarding her ability to work in a "simple, routine work environment"; (3) the ALJ failed to assess the limiting effects of the plaintiff's pain and ability to maintain regular and continuous employment; and (4) the ALJ failed to analyze the factors constituting past relevant work or to analyze the physical and mental requirements of the week-end seasonal job that was considered by the ALJ as her past relevant work.  The Commissioner, in contrast, contends that (1) there is substantial evidence in the record to support the ALJ's decision; (2) the decision comports with applicable law; (3) and that the decision should therefore be affirmed.

## II.      Administrative Proceedings

Nelms applied for disability insurance benefits on August 16, 2002, claiming that she has been unable to work since March 21, 2002, as a result of cervical spine damage, arthritis in her right knee,

back pain, and hypertension.  (Tr. 106, 110).[2]  The Social Security Administration denied her application at the initial and reconsideration stages.  After that, Nelms requested a hearing before an ALJ, which was held on October 29, 2003.  (Tr. 38-58).  On November 17, 2003, the ALJ, Gerald L. Meyer,  issued his decision finding Nelms not disabled.  (Tr. 11-20).

Nelms sought review of the ALJ's adverse decision with the Appeals Council.  On January 29, 2004, the Appeals Council found no basis upon which to grant Nelms' request for review.  (Tr. 5-7).  The ALJ's findings and decision thus became final.  Nelms has filed a timely appeal of the ALJ's decision.  42 U.S.C. § 405(g).  The parties have filed cross Motions for Summary Judgment.  (Document No. 9 & 11).   This administrative appeal is now ripe for ruling.


## III.  Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, (2) and whether the Commissioner's decision comports with relevant legal standards."  *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).  Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of  the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence.  42 U.S.C.§ 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236

---

[2]"Tr." refers to the transcript of the administrative record.

3

(5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a `conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

**IV.    Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson,* 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C.

4

§ 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."  *Anthony,* 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.    If the claimant is presently working, a finding of "not disabled" must be made;

2.    If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3.    If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.    If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.    If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs

are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Leggett,* 67 F.3d at 564.

Here, the ALJ found at step four that Nelms, despite her impairments and limitations, could perform medium unskilled work, including her previous job as a concession stand operator and that she, therefore, was not disabled.  (Tr. 19-20).  In this appeal, the Court must determine whether substantial evidence supports that step four finding, and whether the ALJ used the correct legal standards in arriving at that conclusion.  More particularly, the Court must determine whether the ALJ properly considered and weighed the opinion of Dr. Narvarte, whether the ALJ properly considered the effects of Nelms' mental impairment, whether the ALJ considered Nelms' past work as a concession stand operator as past relevant work for purposes of the step four finding, and whether the ALJ erred by failing to specifically consider and determine whether Nelms could maintain employment on a sustained basis.

In determining whether substantial evidence supports the ALJ's decision, the court generally weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age.  *Wren,* 925 F.2d at 126.

V.     **Discussion**

A.     ***Objective Medical Facts***

The record shows that Nelms was injured on August 21, 1998, while she was a passenger on a Greyhound bus that was hit by an 18-wheeler. (Tr. 165). She sought treatment three days later, on August 24, 1998, at the San Jacinto Medical Clinic. At that time, she complained of headaches, neck pain, low back pain, and pain in her right knee. (Tr. 165-171). Upon examination, tenderness and spasm were noted in the lumbar spine, cervical spine and right knee. (Tr. 165-171). X-rays of the cervical spine, lumbar spine and right knee were generally unremarkable. (Tr. 172). Nelms was, based on the examination and the results of her x-rays, diagnosed with a cervical sprain, a lumbar sprain, and a right knee sprain. (Tr.167). She was prescribed physical therapy, and medication. (Tr. 166).

Nelms was seen thereafter at the San Jacinto Medical Clinic on August 31, 1998, September 14, 1998, October 1, 1998, October 15, 1998, November 30, 1998, December 16, 1998, and December 30, 1998. (Tr. 155-157, 162-164). At each visit, Nelms continued to complain of low back pain, but lessening pain in the neck and right knee. An MRI of the lumbar spine on October 9, 1998, revealed a "3 mm. posterior centrally concentric subligamentous protruded disc at L4-5" and a "4 mm. circumferential left paracentral posteriorly subligamentous herniated disc at L5-S1 with subtle mild touching upon the asymmetrical slightly prominent left S1 nerve root at L5-S1." (Tr. 159-160). An MRI of the cervical spine on October 29, 1998, revealed "[d]essication of the entire cervical discs, more anterior spondylosis from C4 to C7 with anterior spurs"; "[p]osterior spondylosis with borderline central spinal stenosis from C2 to C6"; a "2.5 mm. subligamentous herniated disc with impinging upon the thecal sac at C2-3"; a "2.5 mm. posterior centrally bulged disc at C3-4"; a "2.5-

7

3.0 mm. sharply outlined concentric posterior centrally herniated disc at C4-5 and C5-6 with impinging upon the thecal sac and ventral portion of spinal cord"; and a "1-2 mm. shallow bulged disc centrally at C6-7." (Tr. 161). On December 30, 1998, in connection with her final visit to the San Jacinto Medical Clinic, Nelms reported that she was feeling much better "but continued with on and off pain in the areas of injury." (Tr. 175). She was diagnosed, ultimately, with a cervical sprain, a lumbar sprain, a sprain/contusion to the right knee, herniated discs in the cervical spine, and a herniated disc at L5-S1. (Tr. 175). She was advised to seek further treatment, if the pain persisted, with Dr. Kahkeshani. (Tr. 175).

Nelms was next seen for complaints related to her back and knee pain, by Dr. Donald Gibson, on October 31, 2002. (Tr. 233-236).[3] During the consultative examination, Dr. Gibson found tenderness in the lower lumbar spine with forward flexion of the lumbar spine to 90 degrees, and negative straight leg raising. In addition, Dr. Gibson found that Nelms' motor and sensory reflexes were all intact, that her gait and coordination were normal, that she had no localized sensory loss, muscle weakness or atrophy, that there was no clubbing, cyanosis or edema, that her peripheral pulses were intact, that her peripheral joints were all normal, that all her joints had normal range of motion, and that there was no warmth, effusion or deformity in any of her extremities. With respect to Nelms' right knee, there was 120 degrees of flexion and full extension. Dr. Gibson assessed Nelms' back pain as mild, with "[n]o severe limitation of movement, [no] evidence of radiculopathy, [and] [ ] mild degenerative disc disease." With respect to Nelms' cervical area, Dr. Gibson diagnosed Nelms with

---

[3] Nelms was also seen at different locations in the Harris County Hospital District from July 12, 2000 to September 11, 2002, for various other, unrelated complaints, including seasonal allergies, lesions, vaginal bleeding, postmenopausal symptoms, thyroid problems and nasal polyps. (Tr. 185-232).

a mild cervical strain, with "normal range of motion and no upper extremity radiculopathy." Finally, as for Nelms' knee pain, Dr. Gibson found that Nelms had "mild osteoarthritis", but was able to squat, stand and sit in the office setting without assistive devices and that her normal daily activities were "not severely impaired." (Tr. 235). Dr. Gibson also noted that Nelms' hypertension was "stable" with "[n]o renal, cardiac or neurologic complications." (Tr. 235).

As for Nelms' mental impairment, the consideration of which arose from an unidentified Texas Rehabilitation Commission record that contained reports of "depression, confusion, nervousness, fatigue," Nelms saw Dr. Mark Lehman for a consultative mental health examination on March 4, 2003. (Tr. 246-251). In connection with that examination, Nelms reported that "she has no friends and does not socialize with anyone outside of her immediate family", and that "she is often unable to complete even routine tasks at home due to fatigue and pain." (Tr. 248). In addition, Nelms reported that she has experienced sleep disturbances due to her persistent pain, weight gain, suicidal thoughts, and emotional problems," that "she spends most of her day sleeping or crying," that she has had both auditory and visual hallucinations, and has "persistent fears about dying, and panic attacks characterized by racing heart and shortness of breath." (Tr. 247).

Upon examination, Dr. Lehman found that Nelms' affect was flat and her mood was depressed. (Tr. 249). "She was openly tearful on occasion throughout the assessment [and] reported symptoms consistent with depression, including anhedonia, weight gain, social isolation, fatigue, and suicidal thoughts." (Tr. 249). Dr. Gibson also noted, with respect to Nelms' appearance, behavior and speech, that her "psychomotor activity was grossly within normal limits"; "[s]he was able to ambulate independently"; "[n]o problems were noted with fine motor dexterity"; "[s]peech and language abilities were average"; "[t]he range of her expressive vocabulary appeared to be below

9

average"; "[h]er speech was articulated"; "[t]here was no evidence of stuttering, stammering, or related difficulties"; and "[c]ontent of speech was coherent and relevant." (Tr. 248-49). As for her thought processes, abstract thinking, and thought content, Dr. Lehman found "no evidence of loose association, tangential thinking or circumstantiality," some impairment in abstract thinking, with Nelms unable to interpret simple proverbs, but able to interpret simple similarities, and "no evidence of delusions, obsessions, or paranoia." (Tr. 249). With respect to her sensorium and cognition, Dr. Lehman found that her "[s]ensorium appeared clear," she "did not appear to be confused," she "was grossly oriented to person, place and time (missing the date by two days)," her "[m]emory functions were grossly intact,", her "[s]hort-term memory functions were relatively intact," her "concentration was relatively good," and her "intelligence appeared to be low average." (Tr. 249-250). Finally, with respect to her judgment and insight, Dr. Lehman found that her "judgment and insight appeared to be fair; however, her depression and physical condition are likely of sufficient severity to cloud her judgment and decision making ability." (Tr. 250). Dr. Lehman diagnosed Nelms with a mood disorder "due to chronic, persistent pain, with depressive features." (Tr. 250).

Having considered the objective medical evidence in the record, which reveals that Nelms has several herniated discs, which have not affected her neurologically and have not affected her range of motion, and the objective medical evidence which reveals that Nelms suffers from a mood disorder and associated depression, which have not significantly affected her insight, judgment, thought processes, thought content, or memory, the objective medical evidence factor weighs in favor of the ALJ's decision that Nelms is not disabled.

10

### B.      Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary,  "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been over a considerable amount of time, should be accorded considerable weight."  *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, the opinion must be more than conclusional and must be supported by clinical and laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).  Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez*, 64 F.3d at 176).  The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists.  *Id.*

In this case, there are three types of expert medical opinions in the record: (1) the opinions of physicians who reviewed Nelms' medical records, Dr. Dolan (Tr. 238-245) and Dr. Gilliand (Tr. 253 -270); (2) the opinions of two physicians who conducted consultative examinations of Nelms, Dr. Gibson (Tr. 233-237), and Dr. Lehman (Tr. 246-252); and (3) the opinion of Dr. Hugo Narvarte, Nelms' treating physician (Tr. 176-205, 271-272).  Nelms' main contention in this appeal is that the ALJ erred when he failed to re-contact the treating source physician, Dr. Narvarte, for clarification of his opinion, and failed to weigh the more restrictive limitations provided by Dr. Narvarte against the opinion of any other examining physician.  (Document No. 10).

11

The Social Security Regulations provide a framework for the consideration of expert medical opinions of a claimant's treating physician. Under 20 C.F.R. § 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

(1)     the physician's length of treatment of the claimant,;

(2)     the physician's frequency of examination,

(3)     the nature and extent of the treatment relationship,

(4)     the support of the physician's opinion afforded by the medical evidence of record,

(5)     the consistency of the opinion with the record as a whole; and

(6)     the specialization of the treating physician.

*Newton*, 209 F.3d at 456. While opinions of treating physicians need not be accorded controlling weight on the issue of disability, in most cases such opinions must at least be given considerable deference. Social Security Rule 96-2p provides in this regard:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record only means that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating sources's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling (SSR) 96-2p, 61 Fed. Reg. 34490 (July 2, 1996). In this Circuit, as in most others, before a medical opinion of a treating physician can be rejected, the ALJ must consider and weigh the six factors set forth in 20 C.F.R. § 404.1527(d). *Newton*, 209 F.3d at 456. In the end, however, it is the ALJ who "has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

12

Here, the opinion of Dr. Narvarte was contained in a form entitled "Interrogatory to Treating Physician" that Dr. Narvarte completed on October 13, 2003. (Tr. 271). In that form, Dr. Narvarte indicated that pain was a moderate factor in Nelms' life, that Nelms could maintain attention and concentration for two hours at a time, that Nelms' ability to function would vary from day to day, and that Nelms would likely be absent from work as a result of her impairments approximately three days a month. (Tr. 271). In addition, Narvarte wrote that Nelms would not be able to "work on a sustained basis for 8 hours per day for 40 hours a week on a sustained basis," but qualified that opinion with the written notation that his opinion "depended on required activity level[;] she could possibly have a desk job." (Tr. 271).

The ALJ rejected as follows Dr. Narvarte's ultimate opinion that Nelms could not engage in any sustained gainful activity:

> The undersigned Administrative Law Judge takes notice that the claimant has had 23 visits for medical treatment since 1998 (Exhibit 2F and 3F). There were two months when she had four visits, one month when she had three visits, four months when she had two visits, and four months when she had one visit. She had a total of eleven months with treatment, out of a possible 61 months when treatment could have occurred. At the hearing the claimant testified that she received treatment three times a month. The evidence of treatment does not support the interrogatory done by the treating physician on October 13, 2003. Dr. Narnarte Hugo [sic] stated that he had treated the claimant since June 2002. Dr. Hugo [sic] indicated that the claimant had moderate pain as a factor in her life. Dr. Hugo [sic] stated that the claimant could maintain attention concentration for two hours at a time. Dr. Hugo [sic] opined that the claimant's ability to work on a sustained basis would depend on the required activity level. She could possibly do a desk job. Dr. Hugo [sic] indicated that the claimant would be absent from work as a result of her impairments for three days a month. The undersigned does not feel the medical record substantiates the information that Dr. Hugo [sic] has provided (Exhibit 2F and 3F).

(Tr. 17).[4]

---

[4] Throughout his written decision, the ALJ referred to Dr. Hugo Narvarte as Dr. Hugo.

The ALJ's rejection of Narvarte's opinion in favor of the opinions of the two consultative examining physicians comports with the requirements of *Newton*.  First, the record shows that Nelms was treated by Dr. Narvarte in 2002, but that his treatment of her was generally related to her complaints of headaches, allergies, and hypertension,  (Tr. 187- 188).  In addition, the record does not clearly indicate how often Nelms saw Dr. Narvarte, and does not reveal that she ever voiced complaints to him about back pain, neck pain or knee pain.  Second, Dr. Narvarte's ultimate opinion was not consistent with the objective medical evidence of record, including, particularly, the findings that Nelms had a full range of motion and no neurological or sensory deficits.  The opinions of Drs. Gibson and Lehman, in contrast, were consistent with that objective medical evidence.  (Tr. 17).  Third and finally, the ALJ made specific mention of the fact that Dr. Narvarte's opinion regarding Nelms' ability to work was qualified by Dr. Narvarte himself, when he noted that Nelms' ability to engage in work on a sustained basis depended on the type of work and the level of exertion that was required.  While Nelms argues in this appeal that the ALJ should have re-contacted Dr. Narvarte about his opinion and sought clarification as to the exertional level Nelms was capable of, the ALJ's failure to re-contact Dr. Narvarte was not error.

Where there are gaps or deficiencies in a treating physician's diagnosis or opinion which can be filled or corrected with additional information, the ALJ is obliged to fully develop the record, and seek additional information or explanation from the treating physician prior to rejecting the treating physician's diagnosis and/or opinion. *Id.* at 457.  Social Security Rule 96-2p also speaks to this:

> [I]n some instances, additional development required by a case--for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings--may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the

14

case record.

SSR 96-2p.  Consistent with Rule 96-2p, 20 C.F.R. § 404.1512(e) sets forth the framework for

seeking additional information from a treating source:

> (e)  Recontacting medical sources.  When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.  To obtain the information, we will take the following actions.
>
>> (1)  We will recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.  We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.  In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>>
>> (2)  We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.
>
> (f)  Need for consultative examination.  If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense.  *See* §§ 404.1517 through 404.1519t for the rules governing the consultative examination process.  Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.  However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence.  We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. § 404.1512.  Where doubts are raised about a treating physician's diagnosis and/or opinion, and additional information may be available to eliminate those doubts, a remand to the Social Security Administration for further consideration may be warranted.  *E.g., Newton*, 209 F.3d at 457-58.

Here, as set forth above, Dr. Narvarte's conclusory opinion regarding Nelms' ability to engage in sustained work activity was not supported by the objective medical evidence.  In addition, it was contrary to the findings and conclusions of Dr. Gibson.  Given the limited record of Nelms' treatment by Dr. Narvarte, especially with respect to the impairments she alleges to have resulted in her disability, re-contacting Dr. Narvarte would not likely have yielded a clearer, more supportable opinion.  Therefore, the ALJ's rejection of Dr. Narvarte's opinion regarding Nelms' ability to engage in sustained work activity was proper, the ALJ did not err in failing in re-contact Dr. Narvarte.

As for the ALJ's determination of Nelms' residual functional capacity for medium unskilled work in a simple, routine work environment, that determination is supported by the opinions of Drs. Gibson and Lehman, and the opinions of the two physicians who reviewed Nelms' medical records. Although Nelms complains about the ALJ's use the phrase "simple, routine work environment" for describing the type of work environment she can function in, the findings of Dr. Lehman fully support Nelms' ability to work in such a setting.  Dr. Lehman determined, in connection with the Mental Residual Functional Capacity Assessment he completed, that Nelms could "understand, remember and carry out detailed – but not complex – instructions, make decisions, attend and concentrate for extended periods, accept instruction and respond appropriately to changes in a routine work setting." (Tr. 255).  Based on that determination, as well as the diagnoses and expert medical opinions from Dr. Gibson and the two physicians who reviewed Nelms' medical records, the diagnosis and expert medical opinion factor also weighs in favor of the ALJ's decision.

16

### C.    Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled.  *Cook,* 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record.  42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is `constant, unremitting, and wholly unresponsive to therapeutic treatment.'"  *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v. Shalala,* 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant.  *Hames,* 707 F.2d at 166.

At the administrative hearing held on October 23, 2003, Nelms testified that she has not worked since March 2002 when she left her housekeeping job due to constant back pain.  (Tr. 42).  She explained that she has had pain in her neck, back, and knees ever since the Greyhound bus accident in 1998.  (Tr. 43).  As a result, she wears a neck brace, a knee brace and uses a cane.  (Tr. 43).  She testified that she uses the cane because of arthritis in her knees and her knees giving out.

17

(Tr. 43).  Nelms also testified that she can only lift about 10 pounds, that she can only walk about half a block before she gets tired, and is limited to standing in 15 minute intervals with a cane or 10 minutes without pain.[5]  (Tr. 48-49).   Nelms also testified that she has bronchitis, asthma, and arthritis in her hands.  (Tr. 45).  For relief of her pain, Nelms stated that she was taking Motrin, Ibuprofen, and returning to therapy.  (Tr. 43).   She also stated that she goes to the doctor's office roughly every other week.  (Tr. 49).  Nelms also testified that she may be psychologically depressed. (Tr. 44).  She said that she cries a lot around people because she feels scared, sleeps a lot, and has a low energy level, and that her husband or niece usually have to help her finish her chores because she gets tired after about 15 minutes. (Tr. 48-49).

The ALJ discounted Nelms' subjective complaints as not fully credible.  In so doing, the ALJ wrote:

> At the hearing, the claimant testified that she has not worked since March of 2002. She worked in housekeeping for 9 months and left that job due to back pain.  The claimant testified that she wears a neck brace due to pain every day.  She was on a Grayhound [sic] bus that was involved in an accident.  She uses Motrin and Ibuprofen for her pain.  The claimant stated that her right knee gives out.  She wears a knee brace every day.  She cannot kneel or squat.  She has a cane that she purchased herself.

> * * *

> In evaluating the credibility of the claimant's testimony, the issue[] raised by the claimant's allegations is not the existence of pain but rather the degree of pain or other subjective symptoms, which the claimant experiences.  The undersigned does not find the claimant's symptoms to be as severe as she has alleged.  The objective clinical findings (although not the only factor to be considered) do not support the degree of functional limitations that the claimant alleges.

---

[5] Nelms made similar complaints regarding her subjective symptoms in the Pain Report and Daily Activity Report she completed on September 27, 2002.  (Tr. 131-138, 145-147).

18

> Based on a review of all the evidence, including the claimant's testimony, her statement as to severity of her impairments and the impact on her ability to work, the undersigned Administrative Law Judge finds the claimant's testimony and subjective complaints are not generally credible, and that she can make a vocational adjustment to perform other work.

(Tr. 18).  Credibility determinations, such as that made by the ALJ in this case, are generally within the province of the ALJ to make.  *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

### D.     Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age.  A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

The record shows that Nelms was a 51 years old at the time of administrative hearing, had a high school education, and past work experiences as a hotel housekeeper, a concession stand operator, a cook, a daycare worker, and a stock clerk.  (Tr. 15)  Based on the ALJ's conclusion that Nelms had the residual functional capacity to perform work at the medium unskilled level in a simple routine work environment, the ALJ questioned a vocational expert, Kay Gilbreath, to determine

whether Nelms could perform any of her past work.  The following hypothetical was posed to the vocational expert:

> Q:  Assume for me then, Ms. Gilbreath, an individual who could stand or walk about six hours in an eight hour day with normal breaks, but could sit for six.  Able to lift or carry 25 pounds frequently or 50 pounds occasionally.  No dangerous machinery, No exposure to dust, mist, gases. . . . Simple routine work environment.  Could such an individual do any of the past work that she described?

> A:  Well the concession worker.  We would rule out the housekeeping because they are exposed to dust.  And the other jobs were semi-skilled.

(Tr. 51-52).

Because there is substantial evidence in the record to support the ALJ's conclusion that Nelms can perform work at the medium, unskilled level in a simple routine work environment, and because the vocational expert testified that Nelms could, within that level of work identified by the ALJ, perform her past work as a concession stand operator (work which is light and unskilled), this final factor also supports the ALJ's decision.  While Nelms complains that the ALJ failed to consider whether she could perform such work on a sustained basis given her impairments and associated subjective symptoms, the hypothetical posed to the vocational expert was based on a fully supported residual functional capacity, which presupposed Nelms' ability to engage, on a sustained basis, in medium unskilled work in a simple routine work environment.  Upon this record, including the absence of any evidence in the record or other factual predicate from which a doubt could be raised as to Nelms' ability to engage in substantial gainful activity on a sustained basis, the ALJ did not err in failing to make a specific finding regarding Nelms' ability to maintain employment.  *See e.g., Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003); *Perez v. Barnhart*, ___ F.3d. ___, 2005 WL 1540802 *6 (5th Cir. July 1, 2005).  As for Nelms' final argument, that the ALJ erred in considering her past

work as a concession stand operator as past relevant work given the short amount of time she performed that work, the record shows that the ALJ properly considered and determined that Nelms' past work as a concession stand operator was past relevant work within the meaning of step four. In so doing, the ALJ wrote:

> In the fourth step of the sequential evaluation process, based upon the claimant's residual functional capacity, the Administrative Law Judge must determine whether the claimant can perform any of her past relevant work. The phrase "past relevant work" is defined in the Regulations at 20 CFR §§ 404.1565 and 416.965. The work usually must have been performed within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity.
>
> The vocational expert, Kay Gilbreath, testified that the claimant has past relevant work as a hotel housekeeper that is light in exertional demand and unskilled, as a concession stand operator that is light in exertional demand and unskilled, as a cook helper that is medium in exertional demand and semi-skilled, as a daycare worker that is light in exertional demand and semi-skilled, and as a stock clerk that is medium in exertional demand as identified in the Dictionary of Occupational Titles, but was actually performed at the heavy exertional level and semi-skilled. The vocational expert testified that the claimant is able to perform her past relevant work as a concession stand operator. The claimant testified that she worked at a rodeo concession stand in 1995 for four months and she made $4,245.00. Also, that she worked there again in 2000.

(Tr. 18-19). Because the record shows that Nelms' past work as a concession stand operator was performed by her within fifteen years of her application for disability benefits, that she performed that job for a sufficient length of time to allow her to learn the job, and that she earned $4,245.00 in 1995 over that four month period, the ALJ did not err in considering Nelms' past work as a concession stand operator as past relevant work within the meaning of step four. Therefore, this final factor also weighs in favor of the ALJ's decision.

21

**V.      Conclusion and Recommendation**

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982).  As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ's decision comports with the relevant legal standards, the ALJ's decision was supported by substantial evidence and comports with applicable law.  Therefore, Court

ORDERS that Defendant's Motion for Summary Judgment (Document No. 11) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 29th day of July,  2005.


*Frances H. Stacy*

Frances H. Stacy
United States Magistrate Judge